**19 PAGES**
Gregory C. Nuti (CSBN151754)
  gnuti@schnader.com
Kevin W. Coleman (CSBN 168538)
  kcoleman@schnader.com
Michael M. Carlson (CSBN 88048)
  mcarlson@schnader.com
SCHNADER HARRISON SEGAL & LEWIS LLP
One Montgomery Street, Suite 2200
San Francisco, California 94104-5501
Telephone: 415-364-6700
Facsimile: 415-364-6785

Attorneys for Bradley D. Sharp,
Chapter 11 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE: | Case No. 09-29162-D-11 |
| SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, | Chapter 11 |
| DEBTOR. | |
| BRADLEY D. SHARP, et al., | AP NO. 10-2017 |
| Plaintiff, | DCN: MSS-2 |
| vs. | |
| FRED SALYER IRREVOCABLE TRUST, | OPPOSITION TO DEFENDANTS' SUPPLEMENTAL MOTION TO STAY ADVERSARY PROCEEDINGS |
| Defendants. | |
| | Date: June 15, 2011<br>Time: 10:00 am<br>Place: Dept. D, 6th Floor, Courtroom 34<br>501 I Street, Sacramento, CA |

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION           PHDATA 3384362_2

# TABLE OF CONTENTS

Pages

I. FACTUAL BACKGROUND ................................................................................................ 3
   A. General Background .................................................................................................. 3
   B. The FSIT Action ........................................................................................................ 3
   C. Procedural Posture ..................................................................................................... 4

II. ARGUMENT ..................................................................................................................... 6
   A. The Adversary Proceedings Should Not Be Stayed Because Defendants Have Failed to Show that Salyer's Testimony is "Reasonably Necessary." ........................ 6
   B. The Adversary Proceedings Should Not Be Stayed Because Testimony is Available from Other Witnesses. ................................................................................ 7
   C. The Adversary Proceedings Should Not Be Stayed Because the Preliminary Injunction Has Not Protected the Trustee and Creditors. .......................................... 8
   D. Even if Salyer's Testimony Were "Reasonably Necessary" to Defendants' Defense, a Stay of All Activity in the Case Is Not Warranted. .................................. 14

III. CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

Page(s)

CASES

Fed. Trade Comm'n v. J.K. Publ'ns, Inc.,
 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ................................................................................7

Fisher v. United States,
 425 U.S. 391 (1976) ..........................................................................................................15

Keating v. Office of Thrift Supervision,
 45 F.3d 322 (9th Cir. 1995) .....................................................................................1, 6, 15

STATUTES

Chapter 11 of Title 11 of the Bankruptcy Code ..........................................................................1, 3

OTHER AUTHORITIES

Fifth Amendment .................................................................................................................. passim

Plaintiff, Bradley D. Sharp ("Trustee"), the duly appointed and acting chapter 11 trustee for the estates of SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM", collectively with SK Foods, the "Debtors") hereby submits this opposition ("Opposition") to the Defendants' supplemental motion ("Supplemental Motion ") for a stay of Adversary Proceeding No. 10-2017 (the "FSIT Action"). The Supplemental Motion is supported by an omnibus memorandum of points and authorities filed in the FSIT Action and in several other adversary proceedings, i.e., 09-2692, 10-02014, 10-02016 (collectively, with the FSIT Action, the "Adversary Proceedings"). The omnibus motion was filed by Scott Salyer ("Salyer"), individually and as a trustee of the Scott Salyer Revocable Trust, SK PM Corporation, SK Foods, LLC, SKF Canning, LLC, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Company, LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SS Farms I, LLC, SS Farms II, LLC, SS Farms III, LLC, SKF Aviation, LLC, and CSSS, LP d/b/a Central Valley Shippers; however, the Fred Salyer Irrevocable Trust ("FSIT") and Gerard Rose, as trustee of the Fred Salyer Irrevocable Trust are parties to the FSIT Action (collectively, the "Defendants"). Because Judge Karlton has ordered Defendants to make a case-by-case showing of the necessity of stay in each Adversary Proceeding, the Trustee files this separate brief dealing only with the issues raised by the FSIT Action.[1]

The Defendants' Supplemental Motion is meritless and should be denied. The Defendants have failed to meet the burden of showing that testimony or discovery from Salyer is reasonably necessary to their defense of the FSIT Action, as Judge Karlton's Order, dated April 14, 2011 ("Remand Order"), requires.[2] At most, Defendants have shown that discovery from

---

[1] The Trustee has concurrently filed oppositions in the other three Adversary Proceedings subject to the Defendants' Supplemental Motion. Each opposition addresses the distinct factual situations underlying the Adversary Proceeding in which it is filed.

[2] The Trustee disagrees with the standard articulated by Judge Karlton for staying the Adversary Proceedings and believes that a stay is inappropriate under Keating v. Office of Thrift Supervision, 45 F.3d 322 (9th Cir. 1995), for the reasons set forth by this Court in its Memorandum Decision herein, dated June 1, 2010. The Trustee reserves his right to seek review
...Continued

1

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION　　　　　　　　　　　　　　PHDATA 3384362_2

and testimony by Salyer could be relevant to the claims in the FSIT Action; but Judge Karlton has held that the mere relevance of Salyer's testimony is not sufficient to justify a stay. In this case, there is no showing that Salyer alone has any unique knowledge, necessary to the defense, which cannot be provided by other third parties who can adequately testify.

Moreover, Judge Karlton's willingness to have Adversary Proceedings stayed when Salyer's testimony was reasonably necessary was premised on his finding that the Preliminary Injunction[3] entered in other pending adversary proceedings[4] protected the Trustee and creditors from a dissipation of assets while Salyer's criminal case progressed. This finding has been undermined by recent events demonstrating Salyer's ability improperly to move assets subject to the Preliminary Injunction. Judge Karlton found that these recent events could be considered by this Court in deciding whether to grant a stay. Because Salyer has attempted to violate the Preliminary Injunction despite its clear terms, it offers little real protection against dissipation of the assets sought by the Trustee. Therefore, the Trustee submits that the best interests of the estate and creditors will be served if the FSIT Action can proceed without any further delay. For this reason as well, Defendants' Supplemental Motion should be denied.

Finally, even if the Court found that some stay was appropriate, a complete stay of all activity in the case is not. At the hearing before the District Court, Defendants' counsel conceded that the adversary Defendants would not have a problem with allowing discovery in the Adversary Proceedings to proceed solely from parties other than Salyer or his criminal counsel. *See* Request for Judicial Notice in Support of Opposition to Supplemental Motion ("RJN"), Exhibit J (Dist. Ct. Hr'g Tr. (Apr. 11, 2011) at 13:15-23). At a bare minimum,

---

*Continued from previous page*
of Judge Karlton's rulings regarding the stay at the appropriate time and will not reargue its position here.

[3] The Preliminary Injunction was entered on March 10, 2010. It has since been modified five times, on October 13, 2010, January 20, 2011, February 16, 2011, May 1, 2011, and May 10, 2011. Unless the context requires otherwise, this Opposition will use "Preliminary Injunction" to refer collectively to the original order and all modifications thereof.

[4] The Preliminary Injunction was not entered in this action.

2
OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION  PHDATA 3384362_2

discovery that does not compel Salyer or his criminal counsel to testify should be allowed to go forward.

I. **FACTUAL BACKGROUND**

   A. **General Background**

On May 7, 2009, the Debtors filed voluntary petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code. Involuntary petitions were filed with respect to the Debtors on May 5, 2009 (the "Petition Date"). The Bankruptcy Court appointed Bradley D. Sharp as Trustee following consolidation of the voluntary and involuntary petitions.

On February 4, 2010, Salyer was arrested on charges of mail fraud, wire fraud, bribery, and racketeering based on his participation in an alleged scheme to bribe the purchasing managers of SK Foods's customers, to sell substandard and mislabeled products to customers, and fix the prices charged to SK Foods customers and others. On April 29, 2010, the U.S. government filed a superseding indictment, bringing twelve counts and two forfeiture allegations, including violations of RICO, price fixing, wire fraud, bribery or falsification of mold counts or NTSS levels. All counts revolve around the prices charged to customers and the quality of product supplied to customers.

   B. **The FSIT Action**

In January 2010, the Trustee initiated adversary proceeding No. 10-2017 (the "FSIT Action") against the defendants Fred Salyer Irrevocable Trust ("FSIT") and Gerard Rose, as trustee of the Fred Salyer Irrevocable Trust. The Trustee seeks to recover money loaned by SK Foods to the FSIT. Prior to 1999, the FSIT was formed to own a life insurance policy issued by The Prudential Insurance Company (the "Policy"). The insureds under the Policy were Fred Salyer (Scott Salyer's father) and his wife and the beneficiaries were Scott Salyer and his sister. The costs of the Policy were funded by another Scott Salyer related entity. In or around 1999, the Debtor lent approximately $1,150,000[5] to FSIT to buyout the other Scott Salyer related

---

[5] The Trustee's Motion for Summary Judgment, filed on December 22, 2010, contains a more precise statement of the amount of the original loan. SK Foods lent $1,339,687 to or on behalf of the FSIT, including $47,686.58 that was used by buy out Linda Salyer Lee's interest in
...*Continued*

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION     PHDATA 3384362_2

entity's interest in the Policy (the "Loan") and SK Foods paid Scott Salyer's sister $47,686.58 in satisfaction for her interest in the Policy. This left Scott Salyer as the only beneficiary of the Policy. In addition to the initial amount extended under the Loan, SK Foods made a series of further payments to, or on behalf of the FSIT, to fund the yearly premiums on the Policy. On its financial records, SK Foods also recorded interest accruing on the Loan at 8%.

Even though Scott Salyer is a beneficiary of the Policy, Scott Salyer is not a party to the FSIT Action either in personal or representative capacity. The allegations in the FSIT Action have no bearing whatsoever on Salyer's criminal case or the counts against him regarding prices charges to customers or quality of the products. The Trustee's claim for relief of a money judgment can be proven without requiring Salyer to testify. Particularly, the Trustee of FSIT, Gerard Rose, could testify regarding why SK Foods made payments to, or on behalf of the FSIT, on the Policy. When asked basic questions about the allegations of the complaint, the only person who assisted in the preparation of FSIT's responses was Gerard Rose. *See* Defendant Fred Salyer Irrevocable Trust Response to Special Interrogatories, especially Response to Interrogatory No. 11. Mr. Rose also verified the responses on behalf of FSIT.

Also, Shondale Seymour, the Debtors' former CFO, could also testify as to the payments SK Foods made on the Policy and the manner in which this was booked on SK Foods' financial records. The Defendants have not explained in their motion to stay what knowledge Salyer uniquely has that would be relevant to any claims or defenses in this adversary proceeding. *See* Declaration of Shondale Seymour in Support of Motion for Summary Judgment (Dkt. # 63 in this Action).

C. **Procedural Posture**

The day before a discovery schedule was to be issued, Salyer filed a motion with this Court to stay the FSIT Action and the other Adversary Proceedings. This Court denied the requested stay on June 1, 2010.

---

*Continued from previous page*
the Policy. The remainder was used to buy out Salyer Land Company's interest in the Policy and to pay the fees and costs related to the transactions.

Defendants then appealed to the District Court, which determined that the Bankruptcy Court "abused its discretion in denying Appellants' motion for a stay." Order, dated Dec. 10, 2010 ("Initial Order") at 23:4-5. The District Court found, among other things, that there is a significant overlap between the adversary proceedings and the criminal proceedings. Specifically, the District Court expressed concern that evidence of wrongdoing by Salyer in connection with the transfer of assets could be admissible in the criminal action to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Initial Order at 19:18-20. For that reason, if Salyer were required to testify in the civil proceedings it would implicate his Fifth Amendment rights. The District Court also believed that this Court had not adequately explained why the Preliminary Injunction was insufficient protection for the Trustee and creditors during the pendency of any stay. The District Court thus ordered a "stay of all further bankruptcy proceedings where Appellants make a credible showing that discovery from testimony of Scott Salyer or his criminal counsel is relevant to the proceedings." Id. at 23:12-15.

After Judge Karlton's Initial Order was entered, a dispute arose between the parties regarding whether the Defendants were required to make a showing before an Adversary Proceeding was stayed, as the Trustee contended, or if the Adversary Proceedings were automatically stayed as a result of the Initial Order, as Defendants contended. The Trustee filed a motion for rehearing on the District Court's Initial Order ("Rehearing Motion"), requesting clarification of the order and also asserting that the "relevant to the proceedings" standard articulated by the District Court was not appropriate. Finally, the Trustee argued that recent events had shown that the Preliminary Injunction provided insufficient protection to the Trustee and creditors, and that the Court should therefore reconsider its earlier ruling.

The District Court heard oral arguments on the Rehearing Motion on April 11, 2011, and after acknowledging that its Initial Order was ambiguous and that the relevance standard was too broad,[6] the District Court remanded the case to this Court to decide:

---

[6] Judge Karlton wrote: "Upon further reflection, the court finds that the relevance standard it previously ordered is too broad. Given the significant overlap between testimony in the
...Continued

5
OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION　　　　　　　　PHDATA 3384362_2

whether discovery from or testimony of Salyer or his criminal counsel is reasonably necessary to dispose of a particular matter before the Bankruptcy Court in the adversary proceedings. A matter is reasonably necessary if Appellants cannot adequately defend themselves in an adversary proceeding without evidence from Salyer or his criminal counsel.

Order, dated Apr. 14, 2011 ("Remand Order") at 5:12-18.

The District Court further instructed that, the "Appellants shall file their initial motions to stay before the Bankruptcy Court within fourteen (14) days of the issuance of this order. . . . Failure to bring a timely motion will result in denial of the motion." Id. at 6:3-7:1.

On the Trustee's argument that new evidence undermined the District Court's early decision, the District Court held that "[t]his evidence must first be brought before the Bankruptcy Court in a motion to amend or lift a stay." Id. at 7:11-13.

On April 28, 2011, the Defendants filed a single omnibus Supplemental Motion to Stay in six Adversary Proceedings. At the same time, Defendants filed a motion to stay proceedings regarding their Administrative Expense Claims in the main Bankruptcy Case.

II. **ARGUMENT**

A. **The Adversary Proceedings Should Not Be Stayed Because Defendants Have Failed to Show that Salyer's Testimony is "Reasonably Necessary."**

When deciding whether to stay civil proceedings pending the outcome of a criminal proceeding, the Ninth Circuit has instructed that courts consider "the extent to which the defendant's fifth amendment rights are implicated." Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995) (internal citation omitted).

To do so, the District Court required that the Defendants show that discovery or testimony from Salyer (or his criminal counsel) was "reasonably necessary" to the Defendants in presenting their defense. Remand Order at 5:13-14. Under the Remand Order, "A matter is reasonably necessary if Appellants cannot adequately defend themselves in an adversary

---

*Continued from previous page*
adversary proceedings and the criminal proceedings, discovery from or testimony of Salyer or his criminal counsel would almost necessarily be relevant." Remand Order at 5 n. 5.

6

proceeding without evidence from Salyer or his criminal counsel." Id. at 5:15-18. The Defendants have failed to meet their burden of making this showing.

The Trustee does not believe any discovery from or testimony by Salyer or his criminal counsel is necessary to proceed with the Trustee's case in the FSIT Action. The allegations of the FSIT have no bearing whatsoever on Salyer's criminal proceedings. Moreover, although Alan Huey, currently a defendant in a criminal proceeding (case no. 09-CR-468 LKK) pending before the District Court, was formerly the trustee of the FSIT, his testimony is unnecessary to the Defendants' defense. Rather, testimony from Gerard Rose, currently the trustee of the FSIT, would be sufficient in discussing the activities alleged in the FSIT Action.

The District Court has placed the burden on Defendants to explain what evidence that Salyer alone possesses, without which it is impossible for them to defend themselves. The Defendants, however, have not made any showing of how discovery or evidence from Salyer is reasonably necessary to resolution of the FSIT Action. Nor have they shown that obtaining the evidence needed for Defendants' defense would threaten Salyer's Fifth Amendment rights. *See* Fed. Trade Comm'n v. J.K. Publ'ns, Inc., 99 F. Supp. 2d 1176, 1199 (C.D. Cal. 2000) (stay denied when defendants failed to make effort to demonstrate how truthful testimony possibly subject to one defendant's Fifth Amendment privilege could be helpful to defense on the merits).

In their Supplemental Motion, the Defendants argue that Salyer's testimony is necessary to their defense due to Shondale Seymour's testimony from her declaration in support of the motion for summary judgment in the FSIT Action about Salyer instructing her to reclassify the loan from the FSIT as an investment instead of a note receivable. *See* Supp'l Mot. at 15:2-15. However, the Defendants fail to indicate why such information could not be obtained from an alternative source. At most, the Defendants have asserted that Salyer may possess information that is relevant to the action. However, the District Court has already ruled that this is an insufficient showing. Remand Order at 5, fn 5.

B. **The Adversary Proceedings Should Not Be Stayed Because Testimony is Available from Other Witnesses.**

7
OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION    PHDATA 3384362_2

The Defendants are unable to meet the "reasonably necessary" standard because, in fact, there are other persons involved with the FSIT and the other Salyer-related entities who could testify about SK Foods' loaning and funding the Policy on behalf of the FSIT. Gerard Rose, as trustee of the FSIT, would be the most appropriate person with knowledge to testify. Shondale Seymour could also testify as to knowledge of transactions booked in the SK Foods' financial records for the FSIT. The Defendants have failed to show that Salyer has any unique knowledge about these issues that the foregoing witnesses do not. Without such a showing, Defendants have failed to show that Salyer's testimony is "reasonably necessary" to their defense.

C. **The Adversary Proceedings Should Not Be Stayed Because the Preliminary Injunction Has Not Protected the Trustee and Creditors.**

A key factor in the District Court's determination that a stay was appropriate upon a showing that Salyer's testimony was "reasonably necessary" was the District Court's conclusion that the assets sought by the Debtors in the Adversary Proceedings were adequately protected by the Preliminary Injunction originally entered by this Court on March 10, 2010 in some of the other Adversary Proceedings.[7] New evidence shows that this conclusion was wrong and that there is not adequate protection under the current Preliminary Injunction. The District Court left it to this Court to consider the impact of this new evidence. *See* Remand Order at 7:11-13.

The new evidence shows that a stay is not appropriate here. As described further below, Salyer attempted to move assets protected by the Preliminary Injunction, not once, but twice. Only the Trustee's vigilance (and to some degree his luck) has prevented a repeat of what happened with the Drum Line, which was also subject to an injunction entered by this Court. Thus, the Trustee believes that the assets in the other Adversary Proceedings which have already been converted to cash are in danger of being dissipated by Salyer despite the Preliminary Injunction being in effect.

---

[7] The pertinent Adversary Proceedings that remain affected by the Preliminary Injunction are Nos. 09-02692, 10-02014 and 10-02016.

8
OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION                    PHDATA 3384362_2

When Defendants originally sought a stay of the Adversary Proceedings, they argued to this Court that, because of the Preliminary Injunction, there would be no harm to the Trustee and to creditors, if a stay was entered. *See* Bankruptcy Court Memorandum Decision, dated June 1, 2010, at 9:17-19. This Court rejected that argument and denied the stay. Id. at 9:19-22. In the District Court's Initial Order reversing this Court, Judge Karlton found that this Court's "[f]ailure to provide any explanation as to why the preliminary injunction is insufficient to protect the Trustee and creditors from dissipation of assets due to debtor conduct is clear error." Initial Order at 21:1-8.

In making this finding, the District Court commented that although it was concerned about the allegations raised in the "Drum Line" litigation, the allegations had not yet been proven. *Id.*, fn 8. "Furthermore, the parties have represented that the only remaining assets are real property and money. *These assets, unlike the Drum Line, cannot be transferred without the approval of the Bankruptcy Court and, thereby, then present little or no risk that they will be wrongfully transferred while the preliminary injunction is in effect.*" *Id.* (emphasis added). Unfortunately, two incidents subsequent to the District Court's ruling undermine this conclusion.

On January 6, 2011, Trustee's counsel was contacted by an insurance broker stating that Salyer was attempting to liquidate a life insurance policy held by CSSS, LP, a Defendant subject to the Preliminary Injunction.[8] Earlier that day, the broker was contacted by an individual identifying herself as Cynthia Longoria, who claimed to be Salyer's girlfriend and an attorney. On Salyer's behalf, she demanded that the insurance policy be cancelled and its cash value paid to Salyer. (Salyer was not the policy owner.)[9] From previous investigation by the Trustee, the

---

[8] CSSS, LP is a defendant in No. 10-02016 and thus, subject to the Preliminary Injunction.

[9] Salyer's efforts in January 2011 to liquidate the insurance policy were a continuation of efforts he began in February 2010, a month prior to the issuance of the Preliminary Injunction. Just prior to his arrest, Salyer tried to cancel the policy to keep it from the Trustee, as the following email from Salyer shows:

> **From:** Scott Salyer [mailto:fscott.salyer@gmail.com]
> **Sent:** Wednesday, February 03, 2010 10:28 PM
> **To:** Stephanie@dpiservices.com
> **Cc:** dan@dpiservices.com
> **Subject:** Re: Current NML

*...Continued*

9

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION   PHDATA 3384362_2

broker was aware of legal disputes among the Trustee, Salyer and CSSS, LP, and determined that it would be prudent to contact the Trustee to ascertain if there was any impropriety in honoring Salyer's demand. Had the broker not done so, the Trustee never would have been alerted to this attempt, nor would he have been able to take steps to intervene. Declaration of Christopher Hart In Support of Opposition to Supplemental Motion ("Hart Decl.), ¶ 4, Exhibit B. The Trustee's Counsel notified the Defendants' counsel of the Preliminary Injunction and the Trustee's position that it prohibited the action requested on Salyer's behalf. Id. Immediately after the Trustee notified Defendants' counsel of the improper attempt to liquidate the CSSS, LP insurance policy, the insurance broker informed Trustee's counsel that Ms. Longoria threatened a multi-million dollar lawsuit against the broker for having contacted the Trustee, and since then, the broker has refused to provide any further information to the Trustee. Hart Decl., ¶¶ 7-8. Thus, the Trustee cannot know for sure whether the broker refused to liquidate the policy after being advised of the Preliminary Injunction. The Trustee does not know if the Preliminary Injunction has been violated.

Notwithstanding the Trustee's notice to Defendants in January that he considered Salyer's acts concerning the insurance policy a violation of the Preliminary Injunction, a *second*

---

*Continued from previous page*

Dan

The Trustee for SK has sued CSSS claiming they have a right to the policy . This likely would hang in the Courts for some years .

In the mean time, we are free to continue paying (and risk loosing [sic]) or cancel .

*What [sic] your view on canceling policy and taking the remaining $ 48k. I'm looking for ways to have Trustee to stop pursuit of family assets .*

Does this make sense?

Scott

Declaration of Christopher H. Hart in support of Opposition to Supplemental Motion, ¶ 3; Exhibit A (emphasis added).

potential violation of the Preliminary Injunction occurred two months later. On March 7, 2011, the Trustee received an Accounting from the Defendants of the expenditure of funds subject to the Preliminary Injunction.[10] The Accounting revealed that in February 1, 2011, Gary Perry, a lawyer who represented the Debtors pre-petition, had been paid over $510,000 in funds subject to the Amended Preliminary Injunction. Declaration of Gregory C. Nuti in Support of Opposition to Supplemental Motion (Nuti Decl.), ¶¶ 4-5, Exhibit C.

The Trustee believes the payment to Mr. Perry violated the Amended Preliminary Injunction, which only allows funds to be used "to pay reasonable attorney's fees and costs for services rendered to that particular defendant *in connection with this adversary proceeding and the bankruptcy case.*" Mr. Perry has never made any appearance in nor did he sign any pleadings as counsel of record in connection with any of the Adversary Proceedings or the bankruptcy case. He has not once spoken to Trustee's counsel during the almost two years these cases have been pending, and the Trustee had no knowledge that Mr. Perry claimed SSC Farming was his client, the only entity with money to make payments under the Amended Preliminary Injunction. Nuti. Decl., ¶ 6.

Further, the Amended Preliminary Injunction was a product of lengthy litigation after remand, including motion practice, numerous hearings and extensive negotiations among the parties. These included requests to be paid fees by two law firms -- Nagely Meredith & Miller and Felderstein Fitzgerald Willoughby & Pascuzzi. At no time during any of these proceedings was it disclosed that Mr. Perry was representing SSC Farming and would be seeking payment under the Preliminary Injunction as modified by this Bankruptcy Court's order. Finally, Mr. Perry received in excess of $510,000, while SSC Farming's lead counsel, Nagely Meredith

---

[10] On January 20, 2011, the Bankruptcy Court modified the Preliminary Injunction to allow the use of funds subject to the Preliminary Injunction "to pay reasonable attorney's fees and costs for services rendered to that particular defendant in connection with this adversary proceeding and the bankruptcy case." Declaration of Gregory C. Nuti in Support of Opposition to Supplemental Motion ("Nuti Decl."), ¶ 2, Exhibit A (Amended Preliminary Injunction, dated January 20, 2011, at ¶2). That order also required Defendants to provide the Trustee and the Creditors' Committee with an Accounting of such payments.

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION    PHDATA 3384362_2

& Miller received $347,000; a shocking disparity given the inconspicuous nature of Mr. Perry's purported representation.

Under these circumstances the Trustee demanded that the funds allegedly paid to Perry be returned to the bank account of SSC Farming established under the Preliminary Injunction. The funds were ultimately returned on March 18, 2011. Nuti Decl., ¶¶ 9-11, Exhibits D, E, and F. Although promising to do so at some future time, to date, Salyer's counsel has not provided any documentation or explanation for why the payment to Mr. Perry could even arguably be justified under the terms of the Amended Preliminary Injunction. Salyer's counsel has also not provided any documentation identifying who returned the funds or the account from which they had been returned. (The deposit slip, provided a part of SSC Farming's Accounting for March activities, redacted to conceal the source of the repayment of these funds. Id., Exh. F.)

The Trustee assumes that if there was a legitimate reason to permit payment to Mr. Perry, that explanation would have been readily forthcoming. Given that it has not, the entire episode raises questions as to the propriety of the payment in the first instance and whether in fact it was made for the benefit of Mr. Perry (or whether Mr. Perry was merely a conduit to funnel money to Salyer).

It is no secret that Salyer is short of funds.[11] These two recent events may be a product of that situation and undermines the Trustee's confidence – and should the Court's – that the Preliminary Injunction adequately protects the estate pending a resolution of Salyer's criminal issues. Salyer has a great incentive to violate the Preliminary Injunction, and in the Trustee's opinion, the events recounted above, and in the Drum Line proceeding, show that he is willing to do so regardless of what the Court's orders actually say.

Another recent incident demonstrates that the economic value of the assets subject to the Preliminary Injunction is not being adequately protected, and possibly diverted. On May 27,

---

[11] See MOTION for Permission to transfer funds from Andorra to the United States by Frederick Scott Salyer [Dkt. No. 261], and Defendant's Reply Memorandum to Government's Response to Defendant's Declarations re: Discovery [Dkt. No. 299] filed in Case No. 10-cr-0061 LKK.

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION  PHDATA 3384362_2

2011, a farmer informed the Trustee that he had obtained a sublease in early February 2011 from Eric Mireles for land subject to this Court's Preliminary Injunction[12]. The farmer planted a watermelon crop on the land which he subleased" from Mr. Mireles  When the watermelon farmer applied for water rights to irrigate his crop, he was denied due to defective title.  Mr. Mireles had not "sublet" the parcels he had leased from the Farming Entities, but instead, a portion of the the Farming Entities' other land, which had not been leased to Mr. Mireles, and to which he had no right, title or interest.  Thus, the watermelon farmer has planted his crop on land subject to the Preliminary Injunction without any authorization either under the Preliminary Injunction or, apparently, from the Farming Entities. Nuti Decl., ¶ 12.  Further, the farmer has paid substantial rent in advance to Eric Mireles.  Id.

After these facts came to light, the Farming Entities requested that the Trustee agree to increase the acreage leased to Mr. Mireles to include the land containing the watermelon crop.[13] Nuti Decl., ¶ 13.  Before making any further agreements, the Trustee intends to investigate the circumstances by which Mr. Mireles would agree to sublease land he clearly had no authority to lease.  The Trustee also intends to determine the particular terms of the alleged sublease, including, but not limited to, the term, rent payable, water rights, etc.  Further, Mr. Mireles must provide an accounting of any rents already paid, as any such payments are rightfully owned by SSC Farms I and SSC Farms II in the first instance, are subject to the claims asserted by the Trustee and are subject to this Court's injunction.  Id. at ¶14.

In the event Mr. Mireles was simply acting alone, at a minimum, Defendants' failure to discover the situation[14] or to demand all the rents be paid over to accounts subject to the

---

[12] Recall that on February 16, 2011, the Trustee and Defendants agreed to further modify the Preliminary Injunction to allow SSC Farms I and SSC Farms II ("Farming Entities") to lease a *portion* of their land to Nature Fresh Farms and Green Barn Farms.  Eric Mireles is the principal of both these entities. Nuti Decl., ¶ 3, Exhibit B.

[13] Apparently, Mr. Mireles would be allowed to keep the profit representing the difference between the amount he would pay under the lease from Defendants and the amount he would receive under the sublease.  Defendants have not explained why they should not lease the land directly and capture the full amount of the rents for the benefit of the estate.

[14] It has been represented to the Trustee that Defendants did not know of this trespass until they were contacted by the farmer's lawyer.

13

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION                              PHDATA 3384362_2

Preliminary Injunction demonstrate a lack of diligence causing economic harm to the estate. In the event Salyer or the Defendants are complicit in these events, an entirely new set of issues are raised.

In light of these changed circumstances, the Trustee requests that this Court make a specific finding that these facts establish that the Preliminary Injunction does not provide adequate protection to the interest of the Trustee and creditors. In particular, the Preliminary Injunction does not provide any protection to the Trustee with respect to the FSIT Action because the FSIT is not a party to the Preliminary Injunction.

### D. Even if Salyer's Testimony Were "Reasonably Necessary" to Defendants' Defense, a Stay of All Activity in the Case Is Not Warranted.

At the hearing on the motion for rehearing, the District Court agreed with a suggestion by Trustee's counsel that protecting Salyer's Fifth Amendment rights and the due process rights of the Defendants did not necessarily require that all activity in the Adversary Proceedings be stopped. Rather, even if Defendants could make a showing that Salyer's testimony was reasonably necessary to their defenses, discovery could proceed against the officers, witnesses, or other third parties related to the Defendants who would also have knowledge and information relevant to the defense.[15] Notably, upon the suggestion of Trustee's counsel and the finding by

---

[15] The following discussion by the parties occurred before the District Court:

    Mr. Coleman [Trustee's counsel]: . . . . We would also encourage the Court to consider that there may be lesser intrusive means to accomplish what is necessary to protect Mr. Salyer's Fifth Amendment rights.

    The Court: Tell me what you're thinking.

    Mr. Coleman: Well, for one example, permitting discovery solely against third parties.

    The Court: Oh, I see. I see. That doesn't seem unreasonable to me. Does it to the adversary parties? If I say, look, you can't talk to Mr. Salyer or his lawyer, but if there are third parties out there that you want to take discovery from, feel free to do so.

    Mr. Keowen [Defendants' Counsel]: I don't think the adversary defendants have a problem with that, your Honor.

*...Continued*

OPPOSITION TO SUPPLEMENTAL MOTION TO STAY – FSIT ACTION      PHDATA 3384362_2

the District Court that the suggestion was reasonable, the Defendants' counsel admitted, "I don't think the adversary defendants have a problem with that, your Honor." Dist. Ct. Hr'g Tr. (Apr. 11, 2011) at 13:22-23.

Thus, all parties are in agreement that any stay that this Court might enter should not prevent the Trustee and the Defendants from taking discovery from other third parties, who have evidence related to the Adversary Proceedings.[16] The ability of the Trustee to take discovery of other third parties recognizes the District Court's interests in protecting Salyer's Fifth Amendment rights and the due process rights of Defendants, while also comporting with the Keating standards to allow the interest of the plaintiffs in proceeding expeditiously and serving the best interests of creditors.

III. **CONCLUSION**

WHEREFORE, for all the foregoing reasons, the Trustee respectfully requests that the Bankruptcy Court deny Defendants' Supplemental Motion to stay the Adversary Proceedings.

Dated: June 1, 2011          SCHNADER HARRISON SEGAL & LEWIS LLP


/s/   *Gregory C. Nuti*
      Gregory C. Nuti
Attorneys for Bradley D. Sharp, Chapter 11 Trustee

---

*Continued from previous page*

Dist. Ct. Hr'g Tr. (Apr. 11, 2011) at 13:10-23.

[16] Any concerns Salyer may have that these individuals will offer testimony that could be damaging to his interests in the criminal case is not a basis to issue a stay. The Fifth Amendment protects Salyer from having to testify against himself, it does not give him a right to prevent others from testifying on matters that may potentially incriminate him in criminal wrongdoing. Fisher v. United States, 425 U.S. 391, 398 (1976) (defendant in a criminal tax matter had no Fifth Amendment right to prevent the government from obtaining documents in the possession of his accountant and attorneys).

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785